**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.   05 C 5715 |
| v. | ) | |
| CITY OF PROSPECT HEIGHTS, *et. al.*, | ) | HONORABLE DAVID H. COAR |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Johnson ("Johnson") is suing the City of Prospect Heights, several city officials, police officers, city attorneys and an Illinois state judge, for infringement upon his constitutionally and otherwise federally protected rights, arising from the use of real property. Count 2 of the Complaint alleges a violation of the Fourth Amendment and violation of 42 U.S.C. § 1983.  Count 9 of the Complaint contains allegations that the Defendants harassed the Plaintiff, trespassed on his property and abused police authority; all in contravention of Illinois state law.

Defendants City of Prospect Heights, Steve Skiber and Rodney Erb now move this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56.  First, Defendants contend that Officer Erb is entitled to an affirmative defense of qualified immunity.  Second, Defendants assert Johnson has failed to present facts demonstrating the existence of a policy or custom of constitutional or civil rights violations.  Third, Defendants assert that Johnson's state law claims are barred by the respective statutes of limitations, various immunities, and Johnson's lack of standing.  Johnson also moves this Court for summary judgment on the issues of whether

Officer Erb and the City violated the Fourth Amendment and subjected Johnson to an unreasonable search. For the reasons stated below, Defendants' motion for summary judgment is GRANTED in part and Johnson's motion for summary judgment is DENIED.

**I. FACTUAL BACKGROUND**

An entity called Anderson Acquisition Trust (the "Trust") purchased real property located at 1015 Drake Terrace, Prospect Heights, Illinois (the "Property") as shown by warranty deed made effective as of November 5, 2002. At or near this time Johnson came to be a "possessor" of the property. Johnson does not claim to be a beneficiary of the Trust. At all times prior to these summary judgment proceedings, Johnson claimed to own the Property. He now concedes that he does not now own nor did he ever own the Property, he did not acquire it personally, nor was he ever a tenant. He claims that he was simply a "possessor" of the Property at all times relevant to the events at issue in this case, frequently along with other "possessors," such as Daniel Bender. At some point, Johnson undertook construction on the Property. Johnson also posted signs on the property directing the public to keep out and that entry unto the property would result in a land use fee of $5000.

By September 2003, the City of Prospect Heights (the "City") became aware of the construction occurring on the Property and on September 27th and 30th, notices were sent to the Property directing the residents or owners to contact Steve Skiber, the Building Director of the City regarding the construction taking place at the Property. On October 4, 2003, Mr. Skiber issued an order to stop work on the property, as he is authorized to do under the City's municipal code. That work order was subsequently found to be valid by a Cook County Circuit Court. In or around April of 2005, Skiber entered the Property and posted stop work orders and building

code violations. Also during this time period, Skiber and unknown officers of the City entered onto the Property pursuant to an administrative search warrant to check the Property for mold. The search warrant was held to be valid by another Illinois Circuit Court of Cook County in May of 2005.

A stop work order was issued on October 4, 2003 directing all construction occurring at the Property to immediately halt. On October 5, 2003, a Sunday, the City's dispatch center dispatched Officer Erb to the Property in response to a call from someone claiming that construction was taking place on there. The City had in force at the time municipal ordinances that prohibited construction on sundays, construction done without a permit and construction in defiance of a stop work order. Upon his arrival, Officer Erb heard noises emanating from the rear of the Property that he identified as construction noises. He then went to the front door of the Property and knocked but no one responded. He then walked around to the rear of the Property via an adjacent driveway on the side of the Property. Officer Erb passed through a gate into the rear of the Property where he encountered the Plaintiff. There is some dispute over whether Officer Erb entered a garage before talking to the Plaintiff or afterwards. Nevertheless, Officer Erb admits that at some point he did enter the garage without permission. The garage was attached to the home and there was a door leading inside the home. It is disputed on whether Officer Erb entered the house or not. Officer Erb claims he did not enter the house. Johnson claims he stood in the doorway of the house.

Officer Erb asked Plaintiff several questions about the house, such as who owned it and what was going on, but the Plaintiff refused to answer. Officer Erb observed construction in progress. He also observed several others on the premises, who he identified as workers.

Plaintiff pulled out a video camera, handed it to one of the other people on the Property and that person began recording. Plaintiff ordered Officer Erb to leave his property. Officer Erb responded by backing out of the garage and requesting Plaintiff to accompany him to the front of the home. Plaintiff went to the front of the home under no visible force or duress.

The parties submitted a videotape that records some of the events of October 5, 2003. In the videotape Officer Erb and Johnson are clearly seen in the rear of the Property arguing over the propriety of the construction. Johnson is asserting that Officer Erb's presence is a violation of the Fourth Amendment and Officer Erb is disagreeing. Also, the videotape clearly shows an exposed area near the garage where some sort of remodeling was being done, and one can hear hammering in the background. Officer Erb unmistakenly asks Johnson, "Why don't we go around front?" The two then begin walking to the front. Officer Erb later explained during a deposition that he felt outnumbered in the rear of the Property. In the videotape Officer Erb is not yelling or forcing Johnson to do anything. Officer Erb placed his hand on Johnson's shoulder twice, but he was not pushing Johnson or otherwise exerting force on him.

Officer Erb and Johnson continued their discussion in the front of the Property near Officer Erb's police vehicle. During the discussion Johnson placed his right hand behind his back and underneath his jacket for a few seconds. Several times, Johnson looked around nervously with frustration. A few moments later, Johnson places his hands on the rear of the police vehicle and Officer Erb is seen patting Johnson down. The pat down lasted for a few seconds. Thereafter the two men continue talking and finally Johnson walks away back toward the Property.

On September 27, 2006, this Court issued a Memorandum Opinion and Order dismissing Counts 1 and 3 through 8 of the Complaint on the basis that the Court did not possess jurisdiction to review and render void decisions of the Illinois courts. Counts 2 and 9 survived and are discussed below.

**II. STANDARD OF DECISION**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252; *see also Celotex*, 477 U.S. at 324. When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

**III. DISCUSSION**

**A. Count 2**

Count 2 of the Complaint alleges that Officer Erb and the City violated the Fourth Amendment on October 5, 2003, when Officer Erb entered the Property, seized and searched

Plaintiff and searched the Property, all without a warrant, probable cause, or exigent circumstances. Defendants argue that Officer Erb is entitled to qualified immunity for his actions and that the City should be dismissed from this action because Plaintiff cannot show facts from which a reasonable factfinder could conclude Officer Erb's actions were sanctioned by an established policy or custom of the City.

The doctrine of qualified immunity protects public officials from civil litigation arising out of the performance of their official duties unless the plaintiff can demonstrate the following two factors: first, the plaintiff must be able to show that the public official violated a constitutional right and second, the plaintiff must demonstrate that the law was clearly established at the time of the violation, so that a reasonable public official would have known that his conduct was unlawful. *Bleavins v. Bartels*, 422 F.3d 445, 450 (7th Cir. 2005). Qualified immunity is usually raised early in the proceedings to give the shielding purpose of the doctrine full effect. In this case, Johnson pleaded sufficiently to avoid operation of the doctrine during the motions to dismiss/judgment on the pleadings proceedings.

These facts cannot support a conclusion that Richard Johnson's constitutional rights were violated. There can be no doubt that Officer Erb was investigating a potential violation of municipal ordinances when he entered the Property. A stop work order was in effect and it was a Sunday morning. Someone called the City's dispatch center to complain that there was construction taking place at the Property. The dispatch center sent Officer Erb to the Property in response to that complaint. Officer Erb heard noises emanating from the rear of Property that indicated to him that construction was in progress. Although Johnson disputes these facts, he offers nothing that contests them other than his own (incorrect) opinion of their value as

evidence. For instance, he "disputes" the fact that Officer Erb was dispatched to the Property on the basis that it is hearsay. There is no hearsay involved with an officer explaining that he was dispatched to a residence because of a citizen complaint. To render the fact disputed, Johnson would have to show some evidence that this is false or there was some other reason the Officer came to the Property, not simply arguing that it is hearsay.

These facts do not support a finding a search or a seizure under the Fourth Amendment. For Fourth Amendment purposes, a "search" takes place when the government intrudes upon an individual's *reasonable* and *legitimate* interest in privacy. *Christensen v. County of Boone*, 483 F.3d 454, 459 (7th Cir. 2007) (citing *Katz v. United States*, 389 U.S. 347 (1967)). A court must carefully balance governmental interest against private interests when engaging in a reasonableness determination. *Soldal v. County of Cook*, 506 U.S. 56, 71 (1992). Officer Erb was engaged in an attempt to discover whether municipal code violations were taking place. Obviously, the government has a legitimate interest in responding to complaints of its citizens and in discovering and preventing violations of its laws. Two elements support Officer Erb's legitimate presence on the Property; first, he received a dispatch order to the Property with the understanding that construction was taking place and, second, he observed construction sounds emanating from the rear of the Property. Officer Erb states he knocked at the front door, but no one responded. Johnson has not submitted any evidence that would render these facts disputed. Officer Erb entered the garage. It is evident from the videotape that the construction is taking place in an area, if not within the garage, then directly adjacent to the garage. Officer Erb may have stood in the doorway of the house. There are no allegations or any factual evidence that Officer Erb went beyond these very minimal intrusions in his effort to discover whether the

City's municipal laws were being violated. This Court concludes that Officer Erb did not conduct an unreasonable search as contemplated by the Fourth Amendment when he entered into the rear of the Property to investigate municipal code violations.

Johnson also claims that he was seized by Officer Erb. A "seizure" occurs under the Fourth Amendment when police intentionally restrict the freedom of a person to move about in public. *Christensen*, 483 F.3d at 460 (citing *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989)). An officer must communicate to a reasonable person, either through physical force or through a show of authority, that he is not at liberty to ignore police presence and go about his business. *Id*. at 460 (citing *Florida v. Bostick*, 501 U.S. 429, 437 (1991)); see also *United States v. Packer*, 15 F.3d 654, 657 (7th Cir. 1994). On the facts presented, no reasonable factfinder could conclude that Officer Erb communicated to Johnson, either through physical force or through a show of authority, that Johnson was not at liberty to ignore police presence and go about his business. First, the videotape clearly shows the two men merely having a discussion. While they are talking someone continues to hammer in the background. Thus, Officer Erb's presence did not disturb the ongoing work. Second, Officer Erb merely suggests that the two of them go around to the front. There was no physical force being exerted by Officer Erb upon Johnson; nor does Officer Erb ever command Johnson to do anything. In fact it was Johnson who commanded Erb to leave the garage, an order with which Erb complied.

Officer Erb's actions are more properly characterized as a *Terry* stop, for which an officer need only articulate a reasonable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1 (1968). Officer Erb had a reasonable suspicion that the City's municipal code was being violated. That suspicion was provided by the citizen complaint to the dispatch center and

Officer Erb's own ears and common sense that what he was hearing was construction work taking place in the rear of the Property on a Sunday at a location where a stop work order had been issued. When he went around to the rear of the Property it was Johnson whom Officer Erb encountered. Johnson offers no evidence upon which a reasonable factfinder could conclude that Officer Erb was unreasonable in his suspicion that Johnson was the person responsible for the construction taking place at the Property and that Johnson was who he should briefly detain to further investigate what was happening on the Property.

Once out front, Officer Erb subjected Johnson to a pat down, which Johnson regards as an unreasonable search of his person. The Seventh Circuit has explained that "[c]ircumstances which appear innocent to the outside observer may suggest criminal activity to experienced law enforcement personnel who may assess these circumstances in light of their experience." *United States v. Thornton*, 197 F.3d 241, 248 (internal quotation omitted). The same deference given to officers in assessing criminal activity extends to their assessments of potential danger. To justify a warrantless pat-down search without probable cause, an officer must be able to point to specific and articulable facts indicating that the subject of the search may be armed and present a risk of harm to the officer or to others. *United States v. Brown*, 188 F.3d 860, 864 (7th Cir. 1999) (internal citation omitted). Under these facts, it was reasonable for Officer Erb to subject Johnson to the quick frisk that lasted less than a few seconds. As Officer Erb and Johnson talked near Officer Erb's vehicle, Johnson was displaying frustration and seemed visibly agitated. He looked around several times as if he were disgusted with the situation. He also placed his right arm behind and underneath his jacket for a few seconds. At one point he placed his left hand in his left pants' pocket and removed it quickly. Johnson also would not provide Officer Erb with

an explanation of his identity. These specific facts are enough to justify a skilled officer's use of a *Terry* pat-down to relieve his articulable fear of harm. Johnson understandably resents being patted-down, especially in view of the fact that Officer Erb never declared his intention to do so. But there is no precedent nor logical support for the argument that an Officer must announce his fears and his intentions to conduct a pat-down before he performs one.

In conclusion, neither the Property nor Johnson were subjected to unreasonable searches and Johnson was not subjected to an unreasonable seizure within the meaning of the Fourth Amendment. Ruling on whether Officer Erb is entitled to qualified immunity at this point of the litigation seems moot, but nevertheless it is appropriate since it is the relief sought by the Defendants and as discussed earlier, qualified immunity exists for a public official where the plaintiff cannot establish that his constitutional rights were violated. *See Bleavins*, 422 F.3d at 450. Summary judgment is granted to Officer Erb on Count 2. Summary judgment is granted as to the City on Count 2 as well, as this Court has concluded no constitutional violations were perpetrated by Officer Erb against Johnson on October 5, 2003. Also, a municipality may only be liable under Section 1983 if a municipal actor deprives a plaintiff of her constitutional rights through execution of a municipal custom or policy. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). Thus, summary judgement is appropriate for the City as to Count 2 for the additional reason that Johnson has not presented evidence of any City custom or policy.

**B. State Law Claims**

Count 9 of the Complaint contains allegations that the Defendants harassed the Plaintiff, trespassed on his property and abused police authority; all in contravention of Illinois state law.

In this Count, Johnson complains of unauthorized entry onto the Property, unnecessary surveillance of the Property and its inhabitants and the issuance of two parking tickets on October 5, 2003. Having granted summary judgment for the Defendants on the grounds that no constitutional violations were perpetrated against Johnson, this Court may still exercise supplemental jurisdiction over the remaining state law claims pursuant to Title 28 U.S.C. §1367(a), which states in relevant part that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

It is readily apparent that same the nucleus of operative facts giving rise to Count 9 gave rise to Count 2 as well. The Seventh Circuit stated that "judicial power to hear both state and federal claims exists where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal claims derive from a common nucleus of operative facts." *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995). Supplemental jurisdiction is not limited to "restatements of the same ground for recovery. The claims need only revolve around a central fact pattern." *Euromarket Designs v. Crate & Barrel*, 96 F.Supp.2d 824 (N.D.Ill. 2000) (quoting *White v. County of Newbury, S.C.*, 985 F.2d 168, 172 (4th Cir. 1993)).

Here, Johnson complains that on October 5, 2003 and all times relevant thereafter, the Defendants trespassed onto his property, harassed him and abused police authority. Johnson appears to be operating under the mistaken belief that he is bringing these state claims under Section 1983. That is not so. These claims arise under Illinois law and are brought pursuant to

Illinois law and so Illinois law regarding applicable statutes of limitations and tort immunity applies. The Local Governmental and Government Employees Tort Immunity Act (the "Act") provides that no civil action except for medical malpractice claims "may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 Ill. Comp. Stat. § 10/8-101 (2008). The City is a municipal corporation and thus a "local public entity" as defined by the Act. *Id.* §1-206. Officers and building inspectors of the City are "public employees" under the Act. *Id.* §1-207.

The Act clearly limits the time in which a plaintiff can commence a civil action against a local public entity and its employees to one year after the injury was received or the cause of action accrued. *Luciano v. Waubonsee Community College*, 614 N.E.2d 904, 245 Ill. App. 3d 1077, 1080 (2nd Dist. 1993). Therefore, no Illinois civil action premised on events occurring before October 4, 2004 (one year before the filing of the Complaint, which commences an action in federal court) against the Defendants can be entertained and Johnson is barred from pursuing any civil action arising out of the events of October 5, 2003. Officer Erb is hereby dismissed from Count 9.

However, Johnson refers to October 5, 2003, and *all dates* thereafter mentioned in his Complaint. In the Complaint Johnson stated that on April 7, 2005, Steven Skiber, the City's building inspector and unknown members of the City's police force entered onto the Property pursuant to an administrative search warrant and conducted an unreasonable search. Defendants move for summary judgment only on the basis that Johnson is complaining of Skiber's posting of stop work orders and building violation notices as trespasses that occurred on April 5, 2005.

Although Johnson never states that the April 7, 2005 entry onto the Property is a trespass or act of harassment, the Court will construe it as such and consider it in addition to the April 5, 2005 posting of signs.

The Act immunizes local public employees for any "injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law." *Id.* §10/2-209. Johnson admits that the entry and search of April 7, 2005 were done pursuant to an administrative search warrant. That administrative search warrant was held to be valid by the Illinois Circuit Court of Cook County in its May 27, 2005 order. As explained in its Memorandum Opinion and Order dated September 27, 2006, this Court does not have jurisdiction to review and void orders of the Illinois courts. Since Johnson admits that entry was accomplished pursuant to an administrative search warrant, which has been held valid by an Illinois court of law, he cannot be heard to argue that entry onto the Property was not either expressly or impliedly authorized by law. Skiber and the unknown officers are protected by the Act.

Similarly, the City issued stop work orders and directed its employees to post signs on the Property. Therefore, Skiber was at a minimum, implicitly authorized by law to post the stop work signs and notices of violations. The Act provides that if "a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for any injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable." 745 Ill. Comp. Stat. § 10/2-203 (2008). Thus, even if the City's issuance of the stop work orders and notices of building code violations were "unconstitutional, invalid or inapplicable," Skiber was

protected by the Act when he posted those orders and notices on the Property. Johnson has not pleaded the Defendants acted with malice or in bad faith.

Therefore, Count 9 against Officer Erb is dismissed with prejudice as it is barred by the Act's one year statute of limitations. Count 9 is also dismissed with prejudice against Steven Skiber because the Act renders a public employee not liable for any injuries arising out of his entry upon any property where such entry is expressly or impliedly authorized by law. Lastly, Count 9 is dismissed with prejudice against the City because under the Act, " a local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 Ill. Comp. Stat. § 10/2-109 (2008).

### IV. CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment is GRANTED as to Count 2 only. Count 9 is dismissed with prejudice against all Defendants. Plaintiff Richard Johnson's motion for summary judgment is DENIED. Civil case terminated.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **March 21, 2008**